UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**SEALED**

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 19cr10075 |
| v. | Violations: |
| RUDOLPH "RUDY" MEREDITH, | Count One: Conspiracy to Commit Wire Fraud and Honest Services Wire Fraud (18 U.S.C. § 1349) |
| Defendant | Count Two: Honest Services Wire Fraud (18 U.S.C. §§ 1343 and 1346) |
| | Forfeiture Allegation: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |

U.S. DISTRICT COURT
DISTRICT OF MASS.
2019 FEB 28 PM 4: 02
FILED
IN CLERKS OFFICE

## INFORMATION

At all times relevant to this Information:

### General Allegations

1.    The defendant, RUDOLPH "RUDY" MEREDITH, was a resident of Madison, Connecticut.   From approximately 1995 through November 2018, MEREDITH was employed as the head women's soccer coach at Yale University.

2.    Yale University ("Yale") is a highly selective private university located in New Haven, Connecticut.   The athletic teams of Yale compete in most sports at the Division I level, the highest level of intercollegiate athletics sanctioned by the National Collegiate Athletic Association ("NCAA").   The Yale admissions office typically allocates a number of admissions slots to the Yale athletics department, which then allocates the admissions slots to each head coach of a varsity sport for that coach's recruited athletes.   The admissions prospects of recruited

athletes are higher than those of non-recruited athletes with similar grades and standardized test scores.

3.     William Rick Singer was a resident, variously, of Sacramento and Newport Beach, California.   Singer owned the Edge College & Career Network, LLC, also known as "The Key," a for-profit college counseling and preparation business that he founded in or about 2007 and incorporated in the State of California in or about 2012.   Singer also served as chief executive officer of the Key Worldwide Foundation ("KWF"), a non-profit corporation that he established as a purported charity in or about 2012.   KWF maintained several bank accounts (collectively, the "KWF charitable accounts").

4.     Yale Applicant 1 and Yale Applicant 2 were residents of California.

## The Conspiracy

5.     Beginning in or about 2015, MEREDITH agreed with Singer and others known and unknown to the United States Attorney to accept bribes in exchange for designating applicants to Yale as recruits for the Yale women's soccer team, and thereby facilitating their admission to the university, in violation of the duty of honest services he owed to Yale as his employer.

## Purposes and Objects of the Conspiracy

6.     The principal purposes and objects of the conspiracy included the following:

a.     to facilitate the admission of students to Yale as recruited athletes, regardless of their athletic ability; and

b.     to enrich MEREDITH and Singer personally.

## Manner and Means of the Conspiracy

7.     Among the manner and means by which MEREDITH, Singer and others known and unknown to the United States Attorney carried out the conspiracy were the following:

a.     retaining clients willing to pay bribes to university athletic coaches and administrators in order to gain admission for their children to highly selective universities, including Yale;

b.     designating the children of those clients as purported recruits for competitive college athletic teams in teams in exchange for bribes;

c.     concealing the nature and source of the bribe payments by funneling payments through the KWF charitable accounts.

## Acts in Furtherance of the Conspiracy

8.     On various dates between April 2015 and April 2018, MEREDITH, Singer and others known and unknown to the United States Attorney committed and caused to be committed the following acts, among others, in furtherance of the conspiracy:

9.     In early November 2017, Singer was introduced to the family of Yale Applicant 1 through a Los Angeles-based financial advisor.

10.     On or about November 8, 2017, an employee of the financial advisor sent Singer an e-mail stating that Yale Applicant 1's father wished to make a "donation" to "one of those top schools" for his daughter's "application."

11.     The next day, Singer sent MEREDITH Yale Applicant 1's resume and personal statement, which contained links to Yale Applicant 1's art portfolio.  Singer wrote that he would "revise" the materials to "soccer."

12.     On or about November 13, 2017, Singer sent MEREDITH an athletic "profile" that falsely described Yale Applicant 1 as the co-captain of a prominent club soccer team in southern California.

13.     MEREDITH designated Yale Applicant 1 as a recruit for the Yale women's soccer team—thereby facilitating her admission to Yale—despite the fact that, as he knew at the time, Yale Applicant 1 did not play competitive soccer.

14.     On or about January 1, 2018, after Yale Applicant 1 was admitted to Yale, Singer mailed MEREDITH a check in the amount of $400,000, drawn on one of the KWF charitable accounts.

15.     In or about the spring and summer of 2018, relatives of Yale Applicant 1 paid SINGER approximately $1.2 million in multiple installments, including approximately $900,000 that was paid into one of the KWF charitable accounts.

16.     MEREDITH did not disclose any of the payments he received from Singer and KWF to Yale.

### The Honest Services Wire Fraud Scheme

17.     In addition to accepting bribes from Singer as part of the conspiracy set forth above, MEREDITH also solicited a bribe directly from the father of Yale Applicant 2 in exchange for designating her as a recruit for the Yale women's soccer team.

18.     On or about April 12, 2018, MEREDITH met with the father of Yale Applicant 2 in a hotel room in Boston, Massachusetts.

19.     During the meeting, which was surreptitiously recorded by agents of the Federal Bureau of Investigation ("FBI"), MEREDITH stated that he would designate Yale Applicant 2 as a recruit for the Yale women's soccer team in exchange for payments to himself totaling $450,000.

20.     At the meeting, MEREDITH accepted $2,000 in cash as a partial payment toward the $450,000.

21.     MEREDITH subsequently provided the father of Yale Applicant 2 with information about a bank account in Connecticut to which he wanted future payments to be wired.

22.     On or about April 18, 2018, MEREDITH received a further payment of $4,000, which was transmitted to the Connecticut bank account via wire transfer in interstate commerce, pursuant to MEREDITH's instructions.   The wire was sent from a bank account in Boston, Massachusetts that, unbeknownst to MEREDITH, was under the control of agents of the FBI.

<u>COUNT ONE</u>
Conspiracy to Commit Wire Fraud and Honest Services Wire Fraud
(18 U.S.C. § 1349)

The United States Attorney charges:

23.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-22 of this Information.

24.     From in or about April 2014 through in or about April 2018, in the District of Connecticut and elsewhere, the defendant,

RUDOLPH "RUDY" MEREDITH,

conspired with William Rick Singer and others known and unknown to the United States Attorney to commit wire fraud and honest services wire fraud, that is having devised and intending to devise a scheme and artifice to defraud and to obtain money and property, to wit, admission to Yale University, by means of materially false and fraudulent pretenses, representations and promises, and to deprive his employer, Yale University, of its right to his honest and faithful services through bribes and kickbacks, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
Honest Services Wire Fraud
(18 U.S.C. §§ 1343 and 1346)

The United States Attorney further charges:

25.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-22 of this Information.

26.     On or about April 18, 2018, in the District of Massachusetts and elsewhere, the defendant,

## RUDOLPH "RUDY" MEREDITH,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property, to wit, admission to Yale University, by means of materially false and fraudulent pretenses, representations, and promises, and to deprive his employer, Yale University, of its right to his honest and faithful services through bribes and kickbacks did, for the purpose of executing the scheme to defraud, transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, specifically, a $4,000 wire transfer from a bank account in Massachusetts to a bank account in Connecticut.

All in violation of Title 18, United State Code, Sections 1343 and 1346.

## FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges that:

27.     Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1343, 1346 and 1349, set forth in Counts 1 and 2 of this Information, the defendant,

## RUDOLPH "RUDY" MEREDITH,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.   The property to be forfeited includes, but is not limited to, the following assets:

      a.  Cashier's check in an amount of $308,225.61 provided to the Federal Bureau of Investigation on or about May 21, 2018; and,

      b.  $557,774.39, to be entered in the form of a forfeiture money judgment.

28.     If any of the property described in Paragraph 27, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the Court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 27 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

ANDREW E. LELLING<br>
United States Attorney

By:   _____

ERIC S. ROSEN<br>
LESLIE WRIGHT<br>
JUSTIN O'CONNELL<br>
KRISTEN KEARNEY<br>
Assistant U.S. Attorneys

Date: February 28 , 2019